IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY M. SELMON, | : | Civil No. 3:21-cv-1657 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| LT. CARPER, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Timothy Selmon ("Selmon"), an inmate housed at the United States Penitentiary, Allenwood, in White Deer, Pennsylvania ("USP-Allenwood"), commenced this *Bivens*[1] action in the United States District Court for the Western District of Texas. (Doc. 1). The action was subsequently transferred to the Middle District of Pennsylvania. (Doc. 5). Named as Defendants are Lieutenant Nathaniel Carper, Warden Herman Quay, Captain Michael Hall, and Discipline Hearing Officer ("DHO") Kevin Bittenbender. Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 21). Selmon failed to respond to the motion and the time for

---

[1] In *Bivens*, the United States Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

responding has now passed.[2] Consequently, the motion for summary judgment is deemed unopposed and will be granted.

## I.   Allegations of the Complaint

Selmon alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments. (Doc. 1).

He alleges that DHO Bittenbender violated his due process rights regarding four separate incident reports. (*Id.* at p. 1).

Selmon next alleges that he was housed with another inmate who had an "issue" and with an inmate who was not assigned to protective custody status. (*Id.*). He contends that Lieutenant Carper was aware of these issues and allowed inmates to engage in physical altercations. (*Id.*). Selmon further contends that there was flooding in his cell due to a faulty sewer pipe. (*Id.*). He was temporarily moved to another cell, and Defendant Carper allegedly placed him back in the cell before the sewer pipe was fixed. (*Id.*).

Selmon alleges that he was denied outside yard, unidentified nurses denied him medical attention, he was denied telephone privileges, and a roll of tissue was placed in his dinner tray. (*Id.* at pp. 1-2).

---

[2] Selmon was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 28) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

Selmon alleges that Warden Quay was aware of assault and abuse and failed to notify the court about "rule violations" involving his time credits. (*Id.* at p. 2). He further asserts that Captain Hall did not make rounds to supervise his staff. (*Id.*).

## II.   Statement of Undisputed Facts[3]

Selmon is serving a 30-month term of imprisonment imposed by the United States District Court for the Western District of Texas for possession of stolen ammunition. (Doc. 24 ¶ 2). His current projected release date is May 13, 2022, via good conduct time. (*Id.* ¶ 3). Selmon has been incarcerated at USP-Allenwood since July 21, 2021. (*Id.* ¶ 4). He has been housed in various Bureau of Prisons ("BOP") facilities from November 10, 2020 to July 21, 2021. (*Id.* ¶ 5). Selmon was housed at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("USMCFP- Springfield") from March 20, 2020 to November 10, 2020. (*Id.* ¶ 6).

Selmon has filed a total of three administrative remedies while in BOP custody. (*Id.* ¶ 7). The Administrative Remedy Generalized Retrieval system documents every

---

[3] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statement of material facts. (Doc. 24). Selmon did not file a response to Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1. (*See also* Doc. 28 ¶ 2) (advising Selmon that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

3

administrative remedy filed by an inmate. (*Id.* ¶ 8). Each administrative remedy filed by an inmate is given an identification number upon submission. (*Id.* ¶ 9). The letter of the submission code specifies the management level where the remedy was filed: "F" for institution or warden; "R" for regional director; and "A" for central office or general counsel. (*Id.* ¶ 10). The letter is then followed by a number to indicate how many times that remedy was filed or refiled at that level. (*Id.* ¶ 11).

The Administrative Remedy Generalized Retrieval form indicates that on September 20, 2021, Selmon filed Administrative Remedy Number 1097491-R1 with the BOP Northeast Regional Office. (*Id.* ¶ 12). Administrative Remedy Number 1097491-R1 was filed regarding an alleged false detainer. (*Id.* ¶ 13). On October 13, 2021, Administrative Remedy Number 1097491-R1 was rejected and Selmon was instructed to file a BP-9 at the institution level. (*Id.* ¶ 14). Selmon did not file the BP-9 at the institution level. (*Id.* ¶ 15).

On September 20, 2021, Selmon filed Administrative Remedy Number 1097492-R1 with the Northeast Regional Office regarding protective custody. (*Id.* ¶¶ 16, 17). On October 13, 2021, Administrative Remedy Number 1097492-R1 was rejected for failing to file at the institution level first. (*Id.* ¶¶ 18, 19). Selmon was advised to file at the institution level. (*Id.* ¶ 19). Selmon never filed a BP-9 at the institution level. (*Id.* ¶ 20).

On November 16, 2021, Selmon filed Administrative Remedy Number 1097492-A1 with the Central Office regarding protective custody. (*Id.* ¶ 21). On November 29, 2021,

Administrative Remedy Number 1097492-A1 was rejected. (*Id.* ¶ 22). Selmon was instructed to follow the directions he received on the prior rejection notice. (*Id.* ¶ 23).

## III. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV.   Discussion

Defendants seek an entry of summary judgment based on Selmon's failure to exhaust administrative remedies prior to initiating this action.[4] (Doc. 25, pp. 12-16). Under

---

[4] Because Defendants raised the issue of exhaustion of administrative remedies, the Court notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v.*

the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the

---

*Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 29).

exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

The BOP has established a multi-tier system enabling a federal prisoner to seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19. Before seeking formal review, an inmate must attempt to informally resolve the issue with institutional staff by completing a BP-8 form. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate may present the issue to the Warden within twenty days of the date of the event giving rise to the administrative remedy request by filing a BP-9 form. 28 C.F.R. § 542.14. The Warden has twenty days to respond. 28 C.F.R. § 542.18. An inmate dissatisfied with the Warden's response may submit an appeal on a BP-10 form to the BOP Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The Regional Director has thirty days to respond to an appeal. 28 C.F.R. § 542.18. If the Regional

Director denies the appeal, the inmate may then appeal to the BOP's Central Office, General Counsel, by submitting a BP-11 form within thirty calendar days. 28 C.F.R. § 542.15(a). The Central Office has forty days to respond. 28 C.F.R. § 542.18. No administrative remedy is considered fully exhausted until it is decided on its merits by the Central Office. 28 C.F.R. §§ 541.10-542.19.

Here, Defendants argue that Selmon has failed to exhaust his administrative remedies and have supported this argument with record evidence, including the declaration of BOP Attorney Erin Frymoyer and the Administrative Remedy Generalized Retrieval. (Doc. 24-1). The record reflects that while in BOP custody, Selmon filed the following three administrative remedies. On September 20, 2021, Selmon filed Administrative Remedy Number 1097491-R1 with BOP's Northeast Regional Office regarding a false detainer. (*Id.* at p. 4). On October 13, 2021, the request was rejected, and Selmon was instructed to file a BP-9 request through the institution for the Warden's review and response before filing an appeal at the regional level. (*Id.*). Selmon failed to do so.

On September 20, 2021, Selmon filed a second administrative remedy, Number 1097492-R1, with the Northeast Regional Office regarding protective custody. (*Id.*). On October 13, 2021, the request was rejected for failing to file at the institution level and Selmon was instructed to file a BP-9 request through the institution before filing an appeal at the regional level. (*Id.*). Selmon failed to do so.

9

Then, on November 16, 2021, Selmon filed Administrative Remedy Number 1097492-A1 with the Central Office regarding protective custody. (*Id.* at p. 5). On November 29, 2021, the request was rejected, and Selmon was instructed to follow the directions he received on the prior rejection notice. (*Id.*). There is no evidence that Selmon filed the BP-9 as instructed.

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. *Booth*, 532 U.S. at 738 ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit.").

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp*, 219 F.3d at 281; *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019) ("a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and

10

ignored his follow-up requests for a decision). The record simply does not support a finding that the administrative process was unavailable to Selmon. To the contrary, it establishes that Selmon had full and ready access to the administrative remedy process.

It is undisputed that Selmon failed to properly exhaust any administrative remedies while in BOP custody. Selmon failed to refute Defendants' argument. Notably, he has not provided a verified affidavit, declaration, or any other statement made under the penalty of perjury to support any argument that he properly exhausted his present claims. In light of the undisputed facts and relevant evidence of record, the Court concludes that Selmon failed to produce any evidence to overcome Defendants' summary judgment motion and cannot argue against summary judgment by merely relying on unsupported assertions, inferences based upon a speculation or conjecture, or unverified, conclusory allegations in his complaint. Under Rule 56, Selmon was required to go beyond his pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 324. Because he has failed to do so, the Court concludes that Selmon has not properly exhausted his present claims, and Defendants are entitled to an entry of summary judgment in their favor.

## V. Conclusion

Based on the foregoing, the Court will grant Defendants' motion (Doc. 21) and enter judgment in their favor. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: May 19, 2022